

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> DANIEL ASHE, Director of US Fish and Wildlife Service; TOM TIDWELL, Regional Forester, Chief of the US Forest Service; FAYE KRUEGER, Regional Forester for the Northern Region of the United States Forest Service; PAUL BRADFORD, Supervisor of the Kootenai National Forest; UNITED STATES FOREST SERVICE, an agency of the US Department of Agriculture; U.S. FISH & WILDLIFE SERVICE, an agency of the US Department of the Interior, <br><br> Defendants-Appellees. | No. 14-35936 <br><br> D.C. No. 9:13-cv-00092-DWM <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted February 9, 2017
Seattle, Washington

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  FISHER, PAEZ and CALLAHAN, Circuit Judges.

Alliance for the Wild Rockies (Alliance) appeals the district court's grant of summary judgment in favor of the United States Forest Service (USFS) and the United States Fish and Wildlife Service (FWS) (collectively, the agencies). Alliance alleges the agencies' approval of the Young Dodge Project (Project) in Montana's Kootenai National Forest violated the Endangered Species Act (ESA) and the National Environmental Policy Act (NEPA).  The Project will partially take place on protected habitat of the grizzly bear, a threatened species.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The grant of summary judgment is reviewed de novo.  *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002).  Judicial review of agency action is governed by the Administrative Procedure Act (APA), and we may set aside an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Nw. Coal. for Alts. to Pesticides v. EPA*, 544 F.3d 1043, 1047 (9th Cir. 2008) (quoting 5 U.S.C. § 706(2)(A)).  The arbitrary and capricious standard is deferential, and we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

## I.

The USFS and the FWS satisfied their obligations under the ESA. Section 7 of the ESA requires an action agency to ensure, through consultation with expert wildlife agencies, that its actions are "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 16 U.S.C. § 1536(a)(2). If the action agency determines that a proposed project is not likely to affect any listed species or critical habitat, and the expert agency issues a written concurrence, "informal" consultation may be terminated. As long as an agency follows proper procedures, it is entitled to change its position during the consultation process, and "federal courts ordinarily are empowered to review only an agency's *final* action." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007) (emphasis in original).

The record shows the agencies independently considered impacts from non road-related activities including post-and-pole logging, logging activities outside of the recovery zone, helicopter use and oversized clearcuts. The agencies' analyses of these potential impacts were rationally related to their no-adverse-

effects conclusion.  *See Or. Nat. Res. Council Fund v. Brong*, 492 F.3d 1120, 1125 (9th Cir. 2007).

For example, the Biological Assessment (BA) and the Supplemental BA support the agencies' determination that post-and-pole logging in the recovery zone is not likely to adversely affect the grizzly bear.  First, the BA explains that logging activities only partially enter into the recovery zone and so impact only a negligible amount of available habitat.  Second, the Supplemental BA further explains that logging activities fall within the range-of-effects analyzed by the 2011 Access Amendment Biological Opinion (BiOp) in that they would not result in changes to roads open to the public or total motorized route density and do not decrease core habitat.

Although the first explanation is somewhat conclusory, the agencies' "path may reasonably be discerned" from other evidence in the record.  *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Bowman*, 419 U.S. at 286)).  This evidence includes representations that post-and-pole logging will occur on only 58 acres – a small fraction of the 7,074 acres directly impacted by the Project.  Moreover, the record contains evidence showing that the low density of grizzly bears in the area results in "greater flexibility in habitat selection" for individual bears.  Although the BiOp evaluated only impacts of roads on grizzly bears, it

noted that so long as "road densities are moderate and adequate core habitat is provided, it is likely that the affected bears will find needed food and shelter resources elsewhere in their home range." Because logging will neither increase road density nor decrease core habitat, the BA in combination with the BiOp explain that such activities are unlikely to adversely affect the grizzly.

Further, the Supplemental BA found that timber harvesting outside of the recovery zone would displace bears from 17,596 acres over the Project's term, but that "only a portion of these acres would be unavailable at any given time depending on how the treatment units are divided into timber sales, which would not be active simultaneously." Although the BA does not provide a metric for determining whether staggered logging will limit displacement, there is sufficient evidence elsewhere in the record to support the agencies' conclusion. The agencies considered research that an "adequate quantity and quality of secure habitat" allows grizzlies to "sustain disturbance within their home range without injury or death," and here, a large secure area of core habitat is located immediately adjacent to the Project area. This same reasoning supports the agencies' conclusion that oversized clearcuts will not adversely affect the grizzly bear despite the agencies' recognition that the project exceeds recovery parameters generally limiting openings to 40 acres.

As to helicopter use, the BA found that "surrounding core habitat would serve as refuge for any bears that may be present during the prescribed burning," prescribed burning would not be scheduled during "important biological periods for grizzly bear survival," and helicopter units would be "buffered by a one mile displacement zone." The Supplemental BA made clear the USFS "analyzed the affects [sic] from the use of helicopters to prescribe burn and the affect [sic] on available grizzly bear habitat during the prescribed burn activities." It added that helicopter use is scheduled for a limited duration (eight hours in one day), that there is "secure core area directly to the west to accommodate any disturbed bears," and that the "[s]ecure core is not impacted by helicopter activities because roads are not being opened and activated." The Supplemental BA also said that planned mitigation strategies for helicopter use were within guidance parameters.

Finally, the agencies did not act arbitrarily and capriciously in neglecting to distinctly address the effects of locating oversized openings next to open roads. The agencies considered the underlying concerns associated with roads and oversized openings, including cover and visibility, and Alliance has not shown the combined effect of these two impacts is appreciably different. The agencies did not "entirely fail[] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

## II.

The district court correctly concluded that Alliance waived its NEPA argument by failing to exhaust administrative remedies. *See Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002) (citing 5 U.S.C. § 704). Alliance's statements submitted during administrative review failed to adequately apprise the USFS of Alliance's concern that the combined effect of locating oversized openings next to open roads poses unique risks.

## III.

In sum, we are satisfied – on an independent review of the administrative record – that the USFS and the FWS complied with the ESA, NEPA and the APA.

**AFFIRMED**.